B. F. Curry, Marvel I. Curry v. Commissioner.
Curry v. Commissioner
Docket Nos. 20129, 20130.
United States Tax Court
1951 Tax Ct. Memo LEXIS 337; 10 T.C.M. (CCH) 118; T.C.M. (RIA) 51039; January 30, 1951
Albert E. James, Esq., 60 Broadway, New York, 4, N. Y., for the petitioners. William F. Evans, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated proceedings the Commissioner determined a deficiency of $17,846.64 in the income tax of petitioner B. F. Curry and a deficiency of $16,775.24 in the income tax of petitioner Marvel I. Curry, both for the calendar year 1943. The issues presented relate to (1) whether respondent erred in disallowing deductions claimed by petitioners *338 and their partnership for business expenses under the heading of travel and entertainment, for the years 1942 and 1943, and (2) whether the petitioners, with a bona fide intent acting with a business purpose, formed a partnership with their son, Ora J. Curry. The year 1942 is involved because of the provisions of the Current Tax Payment Act of 1943. [The Facts] Petitioners are husband and wife residing in Scarsdale, New York. During the years 1942 and 1943 they were partners in B. F. Curry Company of New York, New York (hereinafter sometimes called the partnership). The individual and partnership income tax returns were all filed with the collector of the fourteenth district of New York with the exception of the partnership return for 1942, which was filed with the collector for the third district of New York. The partnership business was buying, selling, and servicing new and used cars and trucks. It was one of the largest dealers in the east, employing about seventy people. In 1942 its gross receipts were about $739,038 and in 1943 about $1,105,921. Sales were not to clientele from any particular community, but were to customers from any section of the city or state. *339 In 1921, B. F. Curry formed the 125th Street Auto Sales Corporation. It was succeeded, in 1925, by B. F. Curry, Incorporated. The original incorporators included B. F. Curry, Marvel I. Curry, and their oldest son, B. F. Curry, Jr. In 1929, B. F. Curry gave his son Ora, then five years old, fifty shares of stock in the corporation. Ora, who was born October 7, 1924, spent some time during his childhood and adolescence around his parent's automobile business but otherwise devoted the major portion of his time to regular attendance at school. On December 30, 1940, Ora, pursuant to a plan to form a partnership, transferred his fifty shares of stock to his mother, petitioner Marvel I. Curry, for her note for $5,000, due one year after date. The next day, December 31, 1940, the partnership, B. F. Curry Company, was formed, including B. F. Curry and Marvel I. Curry as partners. It took over the capital assets of the corporation valued at $100,000. Each partner owned a one-half interest therein. On January 15, 1943, a new partnership agreement was drawn up and signed by B. F. Curry, Marvel I. Curry, and Ora J. Curry. At this time Ora, eighteen years of age, had just withdrawn from Dartmouth *340 College inasmuch as he and his parents expected him to be drafted at any time. The partnership agreement provided: "AGREEMENT, made in the City of New York on January 15, 1943 between BERNARD F. CURRY, MARVEL I. CURRY, AND ORA J. CURRY, all residing at 50 Invernes Road, Scarsdale, New York. "WHEREIN IT IS MUTUALLY AGREED AS FOLLOWS: "1. Bernard F. Curry and Marvel I. Curry hereby agree to sell to Ora J. Curry 20% each of their interest in the partnership business known as B. F. Curry Co. located at 3300 Broadway, New York City, N. Y.
"2. Ora J. Curry agrees to purchase from Bernard F. Curry and Marvel I. Curry 20% of the interest each owns in the said partnership business. "3. Ora J. Curry agrees to pay to Bernard F. Curry for said interest $10,000 to each; payable as follows: $500 in cash to each upon the execution of this agreement, and by execution and delivery of two notes each in the sum of $9,500 payable one (1) year from January 15, 1943, together with interest at 4% per annum. "4. The parties agree that Ora J. Curry shall become a partner in the said business to the extent of the interest purchased this day. "5. The parties agree that the name of the partnership *341 shall be B. F. CURRY CO. "6. That the term of the partnership shall begin on January 15, 1943, and terminate at will. "7. That full and accurate accounts of the transactions of the partnership shall be kept in proper books; and each party shall cause to be entered in the said partnership books a full and accurate account of all of his transactions in behalf of the partnership. "8. That the books of the partnership shall be kept at the place of business of the partnership, and each party shall, at all times, have access to, and may inspect and copy, any of them. "9. That the net profits or net loss shall be divided equally between the parties hereto, and the account of each shall be credited or debited, as the case may be, with his proportionate share thereof. "10. That the drawings of each partner shall be agreed upon between all the parties." Pursuant to this agreement accounts were set up to record the partnership interests and earnings, and later, entries were made to record the allocation of profits to partnership holdings. A certificate of partnership was filed on April 21, 1943, under the partnership law of the State of New York. Pursuant to the partnership agreement, *342 Ora gave Marvel his note for $9,500, due in one year. This amount was then partially reduced by Ora's relinquishing to Marvel her note for $5,000, dated December 30, 1940, which note he still held, and on which Marvel had made no payments. Subsequently, on June 19, and September 14, 1943, he received two checks for $2,000 each from earnings of the partnership which he endorsed over to Marvel as payments under the agreement. She in turn applied them to her investment in another corporation in which she was interested, receiving credit for them on the books of that corporation. With respect to B. F. Curry, Ora paid him $500 on December 26, 1943, in accord with the agreement, and $6,000 on December 30, 1944. He later completed payments to both B. F. Curry and Marvel I. Curry. Ora worked full time in B. F. Curry Company for approximately nine months, from January to September, 1943. On or about September, 1943, he was drafted and entered the army. For a few months he was stationed at Long Island, later at stations in the west, including Denver, Colorado, before he was sent to foreign service duty. In 1946 he was released from the army and returned to work in the partnership. The *343 petitioners, acting pursuant to their agreement of January 15, 1943, did form a valid business partnership. In its income tax returns for 1942 the partnership claimed as deductions for travel and entertainment expenses the sums of $7,595.40 for 1942 and $10,113.72 for 1943. The expenses claimed included about one hundred seventy items in various categories, including luncheons, liquor, Christmas gifts, cigars, flowers, employee parties and meetings, trade association membership fees, tickets for theatre and athletic events, cab fares, contributions to charity, and the expense of several trips to Washington, D.C., and one to Raleigh, North Carolina, and miscellaneous unidentified items. B. F. Curry also expended various sums for membership fees and dues and charges for food, liquor, and the like in the Leewood Golf Club, Inc. and the Orienta Beach Club. These expenditures were made by check or in cash. Meetings with the partnership employees and customers were held at the clubs and B. F. Curry also made some personal use of their facilities. In October, 1943, B. F. Curry began a three-month trip to California accompanied by Mrs. Curry. The Currys visited such places as Carmel-by-the-Sea, *344 California, Palm Springs, California, and Colorado Springs, Colorado. On their way back to the east the Currys visited their son, who was then in the army and stationed near Denver, Colorado. Expenditures of about $4,000 on this trip were borne by the partnership. The purposes of the trip were partly business and partly personal. No more than $1,500 in 1942 and $3,000 in 1943 was expended by the partnership for business purposes. B. F. Curry claimed the sum of $1,400 as a deduction for travel and entertainment in his individual return for the year 1942 and the sum of $1,800 in 1943. In her return for 1942, Marvel I. Curry claimed a total deduction of $850 for expenditures on behalf of the business for gas, oil, and entertainment, and in her 1943 return deducted $600 for similar expenditures. None of the claimed expenditures was made for business purposes. The Commissioner determined a deficiency in the 1943 income tax returns of B. F. Curry and Marvel I. Curry after disallowing in toto deductions for travel and entertainment expenses both in the partnership and individual returns of the petitioner, as stated above, and after including in their income additional amounts which *345 petitioners reported as the distributive share of Ora Curry for the year 1943. Opinion The first issue presented for our decision is whether petitioners had a bona fide intent, acting with a business purpose, to make Ora J. Curry, their son, a partner in the B. F. Curry Company partnership. The agreement signed by the petitioners and their son Ora provided for the son's purchase of a 20 per cent partnership interest in the business on the date of the agreement, January 15, 1943. Partnership accounts were set up and net profit or net loss was to be divided among the parties and the account of each to be debited or credited, as the case may be, with each partner's proportionate share; and the drawings of each partner were agreed upon among all parties. Provision was also made for payment of $10,000 to B. F. Curry and Marvel I. Curry for the 10 per cent interest in the partnership each relinquished to make up Ora's 20 per cent, $500 in cash to be paid to each upon the execution of the agreement, and the balance by execution and delivery of two notes each in the sum of $9,500 and interest thereon payable one year from the date of the agreement. The terms of this agreement were *346 substantially carried out by petitioners and Ora. Some discrepancies between the agreed terms of payment and the actual payments did arise with respect to time. Thus, Ora did not make the $500 payment to petitioners "upon the execution of the agreement", but waited several months to make such payment to his mother, and almost a year, to his father. Petitioner B. F. Curry's uncontradicted testimony was to the effect that all payments were eventually made and a large part of those payments were shown by additional evidence in the form of cancelled promissory notes and checks. There is little reason to doubt, and the evidence tends to support the view, that Ora utilized his earnings in the partnership to offset the major portion of the indebtedness he incurred when he purchased an interest in the partnership. In any event, the automobile dealer business, while not entirely dependent on personal services of partners as the source of its income, would appear to derive the greater part of its earnings from their skills as salesmen and administrators rather than through the use of its capital. The experience of the business substantiates this observation when we consider that the partnership, *347 on assets valued at about $100,000, reported taxable income in 1942 of $75,285.18 and in 1943 of $137,520.71. There is no doubt but that Ora's experience and ability were of lesser importance to the partnership than those of his parents, the petitioners, who had spent many years in this particular enterprise. Ora, however, did have some acquaintance with this business, having spent some of his spare time around the shops. But it is not necessary, under the circumstances of this case, for the petitioner to demonstrate that the boy was equal in any or all respects to the petitioners insofar as his contributions of services are concerned, but only that those services were of value and in accord with the pattern of intent to form a partnership. Ora, after signing the agreement of January 15, 1943, was a full-time participant in the work of the partnership up until the time he entered the army in September, 1943, and there is no reason to believe that those services were inconsequential or merely formal. His share of the partnership income reflected frankly his inferior role in the production of partnership income. We cannot, under the circumstances of this case, reallocate the partnership *348 shares of the earnings on any terms other than the agreed apportionment. ; . Nor can we say that because world events provided a greater measure of uncertainty that Ora, as a young man of draft age, would be unable to continue on indefinitely or for any known length of time as a partner, the genuineness of the intent of the petitioners to make him a partner should be precluded. Even though the nation was at war, the petitioners had to make plans and continue their activities with the hope of completing them. Furthermore, after the war Ora did return to the partnership, again to take an active role in its affairs. Thus, the pattern throughout indicates an intent to form a partnership, albeit in an atmosphere of uncertainty beyond the control of the parties. Upon all the evidence, we find that the Commissioner erred in increasing the shares of the partnership income allocated to the petitioners by attributing to them the share of the earnings assigned to their son, Ora J. Curry. The second issue presented for decision is whether the Commissioner erred in disallowing *349 in toto deductions for business expenses claimed under the heading of travel and entertainment in the partnership's and the individual petitioners' returns. The partnership listed some one hundred and seventy-seven expenditures, including therein some general categories which themselves were subject to further itemization. The individual petitioners submitted no listing or itemization or documentary evidence to identify the expenditures claimed as deductions in their individual returns. The deductions in question were sought under section 23 (a) (1) (A) [1] which must be applied in conjunction with section 24 (a) (1) [2] of the . The appropriate regulations are Regulations 111, section 29.23 (a)-1 and 29.23 (a)-2. *350 The petitioners have the burden of proof and persuasion to establish not only that the expenses were ordinary and necessary, paid or incurred in the taxable year, but also that they were connected with the pursuit of or the carrying on of the trade or business and not made for personal reasons. ; ; Most of the deductions claimed by the partnership are denominated as expenditures typical of those commonly made by business men in the pursuit of customers, the maintenance of cordial employee relations, and the promotion of good relations with sources of supply. With respect to the partnership, Curry testified that he kept records of his expenditures, along with his appointments, on a desk calendar. He stated that sheets from this pad were collected until the end of the month, when the information noted on the pages was transferred to vouchers and the books of the partnership. These calendar pages were not produced at the trial. It is difficult to see why during this period when the supply of automobiles was scarce and closely controlled *351 by the Government such heavy expenditures for promotional purposes were required. B. F. Curry's testimony did not throw too much light on this point, for in the main it was of a general nature, emphasizing only the opinion of this petitioner that these expenditures were of value to the business. A demonstrable connection between claimed items and specific transactions, particularly under these circumstances, was in order but the petitioner has failed to establish such connection in many instances. Cf. ; . Here are a few excerpts from the volumious record which demonstrate the unsatisfying nature of some of the testimony on certain items: "Q. What is the next one? "A. Off hand, I do not recall that. That is someone I did business with whom I took out to lunch. * * *
"Q. "Sales executive outing, Westchester County." "A. That is the sales executive club of New York. They had an outing at Westchester Country Club and I spent $42 there. I am a member of that sales executive club. * * *
"The next item was a golf tournament at the Whiteguild Country Club. It was a golf tournament *352 at which I spent $22. * * *
"The next item is Fred Miller. Fred Miller was president of Mid-Town Chevrolet, for lunch $7. * * *
"The next item, I had lunch with Phil Curry, P. J. Curry, that is a brother of mine who worked for me at that time, $4.50. * * *
"The next item, dinner House of Chan, $18. Following that, the Latin Quarter, $64. * * * I do not recall exactly who were my guests, but it was for business purposes." We have no doubt that the claimed expenditures were made, but expenditures are not transformed into allowable deductions simply because the spender asserts they were made for business purposes. The relationship of the expense to the business must be more convincingly shown. With respect to amounts claimed for travel expenses, the partnership, and the individual petitioners, presented little more than bare estimates of total expenses for several trips whose purposes were stated in the most general terms. Cf. ; Regulations 111, section 29.23 (a)-2. The record is such that it is not possible to make an accurate finding of the amounts expended by the partnership or on its behalf for business expenses. *353 Nevertheless, since we are convinced that a portion of the amounts claimed was actually expended for purposes which fall within the category of ordinary and necessary business expenses and some for travel, we conclude that the respondent erred in disallowing the claimed deductions of the partnership in toto. After a careful examination of all the testimony and exhibits we find, therefore that not more than $1,500 in 1942 and $3,000 in 1943 of the claimed amounts should be allowed as deductions for travel and entertainment expenses incurred for business purposes. Cf. ; ; ; affirmed . With respect to amounts claimed on petitioners' individual returns for 1942 and 1943 as travel and entertainment expenses, petitioners have failed to sustain their burden of proof to show that these expenditures were made in pursuit of or in carrying on a trade or business. The amounts claimed were admittedly arbitrary estimates unsupported by records or vouchers of any kind. The respondent did not err in disallowing the claimed amounts in toto. Decision *354 will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. ↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23 (X);↩